```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 16, 2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

                -against-

JOSEPH BELMAR,

                           Defendant.

--------------------------------------------------------X

21-CR-16 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

      Defendant Joseph Belmar pleaded guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Presentence Investigation Report ("PSR") ¶¶ 2–3, ECF No. 50.) In the Court's May 31 Opinion & Order, the Court determined that it would apply a four-level enhancement to Belmar's base offense level because Belmar used or possessed a firearm in connection with having committed reckless endangerment in the first degree. (*See* Op. & Order at 12–13, ECF No. 74.) The parties dispute whether Belmar should receive a two-point enhancement for his alleged obstruction of justice, a three-point reduction for his acceptance of responsibility, and whether Belmar is in Criminal History Category III or IV.

      For the reasons set forth below, the Court finds that Belmar has obstructed justice, that Belmar is not entitled to acceptance of responsibility credit, and that Belmar is in Criminal History Category IV. The Court finds that Belmar's total offense level is 26. Based on an offense level of 26 and a Criminal History Category of IV, Belmar's Sentencing Guideline Range is 92–115 months' imprisonment.

**BACKGROUND**

The Court assumes familiarity with the facts of this case, which are outlined in detail in the Court's May 31, 2024 Opinion and Order. The Court mentions additional facts here only as necessary for purposes of this decision.

On November 15, 2023, the Court held a *Fatico* hearing in connection with the Government's claim that Belmar used a gun to attempt to commit murder. Investigator James Menton testified at the *Fatico* hearing.

Following the *Fatico* hearing, on November 20, 2023, Belmar submitted a letter to the Court in which he requested new counsel and stated that he was requesting new counsel that is "willing to work with me and not manipulate me into thinking that I am guilty when all I am doing is proving my innocence." (Def.'s Nov. 20 Letter at 2, ECF No. 73; Order, ECF No. 62.)

In a submission dated December 27, 2023, Belmar contended that: (1) a witness to the shooting stated that the shooter was a "short, skinny, dark skinned male," and that Belmar is "NOT 'skinny,' short or dark skinned";[1] (2) the Government "didn't present [proof]" that Belmar admitted to the shooting; (3) he was "persuaded by his [former lawyer] into admitting that the gun was his; (4) he never stated that "he shot a gun";[2] (5) "nobody give Mr. Belmar a gun"; (6) "he didn't want to admit that the gun was his"; (7) he never owned the iPhone seized from him that contained the damning text messages and Google searches; (8) he doesn't know to whom the iPhone belonged; and (9) he does not know any of the people whose text messages appear on the iPhone. (*See* Def.'s Dec. Letter at 1–3.)

---

[1] Belmar wrote that he is 5'10 in height, weighs "220 plus pounds" and is "brown skinned." (Def.'s Dec. Letter at 2, ECF No. 72.)

[2] On January 4, 2024, the Court received a letter from defense counsel Pittell that states: "We agree [that the reckless endangerment enhancement] is applicable based on the circumstances of the matter at bar." (Def.'s Jan. Letter at 7, ECF No. 64.) Pittell's other sentencing submissions assume that Belmar possessed and fired a gun. Belmar now disputes—in his *pro se* submissions—that he fired a gun, and appears to claim that his concession was not consistent with Belmar's version of the facts.

On February 5, 2024, Belmar wrote to the Court raising a claim of ineffective assistance of counsel. Belmar claimed that he was informed previously that "there was a court obtained search warrant to intrude upon a cell phone alleged to be mine[], yet I was just informed that no such search warrant even existed . . . In light of this new information[] I attest that I would [have] definitely moved the court for a suppression/recovery hearing concerning the unlawfully seized cell phone." (Def.'s Feb. Letter at 1, ECF No. 78.) Belmar stated again that "I'm being falsely charge[d] of a crime that I did not commit," and that he was falsely identified as the shooter.[3] (*Id.*)

On March 11, 2024, Belmar wrote a letter to the Court contending that: (1) "[Investigator] Menton fail[ed] to do a proper identification procedure to see if the eyewitness [who stated that he "observed a short, skinny, dark skinned male"] is accurate on [*sic*] identifying the allege[d] shooter [and] moreover there was [*sic*] no line ups, show ups and photo arrays [that] were ever conducted to come up with the conclusion that indeed Mr. Belmar was the allege[d] shooter";[4] (2) Investigator Menton did not have probable cause to arrest Belmar or seize his property; (3) Belmar was "persuaded by his [former lawyer] into admitting that the gun was his"; (4) Belmar did not sign a valid *Miranda* rights waiver; (5) Investigator Menton failed to obtain a search warrant to collect evidence from the iPhone found on Belmar at the time of his arrest; and (6) Investigator Menton committed perjury at the *Fatico* hearing. (Def.'s Mar. Letter at 1–2.)

On April 3, 2024, the Court held a conference to discuss Belmar's *pro se* submissions and his claim of ineffective assistance of counsel. His counsel stated that Belmar "still wants to

---

[3] At the Court's April 3, 2024 conference, the Court decided not to appoint new counsel for Belmar. (Apr. Conf. Tr. at 11:8–17.)
[4] Belmar argues further that there was no video footage linking him to the shooting. (Def.'s Mar. Letter at 2, ECF No. 71.)

3

go forward with [his motions.]" (Apr. Conf. Tr. at 2:12–15.) The Court then stated that it had reviewed Belmar's motions and saw no merit in them. (*Id.* at 9:17–18, 9:25–10:3, 11:3–4.)

## LEGAL STANDARDS

Section 3C1.1 of the Sentencing Guidelines provides for a two-point enhancement if "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1. Submitting "materially false information to a judge" may constitute obstruction of justice. *Id.* cmt. n.4(F). Material evidence is "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Id.* cmt. n.6.

Section 3E1.1 of the Sentencing Guidelines permit a two-point reduction to a defendant's offense level if "the defendant clearly demonstrates acceptance of responsibility for his offense." *Id.* § 3E1.1(a). In addition, a defendant may receive an additional one-point reduction if the Government moves for a reduction on the basis that "the defendant [] assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." *Id.* § 3E1.1(b). A defendant "who enters a guilty plea is not entitled to an adjustment . . . as a matter of right." *Id.* cmt. n.3; *United States v. Hirsch*, 239 F.3d 221, 226 (2d Cir. 2001). "Whether or not a defendant has accepted responsibility for a crime is a factual question." *United States v. Strange*, 65 F.4th 86, 91 (2d Cir. 2023) (quoting *United States v. Irabor*, 894 F.2d 554, 557 (2d Cir. 1990)). The Court's decision whether to

grant credit for a defendant's acceptance of responsibility is "entitled to great deference." U.S.S.G. § 3E1.1 cmt. n.5.

## DISCUSSION

### I.   Factual Disputes[5]

In Belmar's various letters to the Court, Belmar contends, among other things, that: (1) he was not the perpetrator of the shooting, and that evidence purporting to show that is false; (2) the iPhone found on him at the time of his arrest was not his; (3) he had no knowledge of the text messages and Google searches extracted from the iPhone at issue; (4) he did not waive his *Miranda* rights; and (5) he never admitted to being the shooter.[6]

First, apart from the eyewitness's description of the shooter as a man who does not resemble Belmar, there is overwhelming evidence that Belmar committed the December 11, 2020 shooting. Among other things, Investigator Menton observed Belmar fire 4–5 shots using a firearm.[7] (Gov't Sent'g Letter at 8, ECF No. 63.) After chasing Belmar, and prior to apprehending him, Investigator Menton observed Belmar drop the firearm that Belmar had used in the shooting. (*Id.* at 9.) In addition, and as discussed further below, Belmar admitted to the shooting after waiving his *Miranda* rights voluntarily. (*Id.*)

Second, there is overwhelming evidence that the iPhone found on Belmar after the shooting was his, and that he sent the text messages and conducted the Google searches at issue.

---

[5] The Court makes the following findings of fact based on a preponderance of the evidence. *See, e.g.*, *United States v. Thorn*, 317 F.3d 107, 117 (2d Cir. 2003) ("Facts relied on in sentencing need be established by a preponderance of the evidence."). The Court made factual findings in its May 31, 2024 Opinion and Order. (*See generally* Op. & Order at 2–4.) The following findings of fact are made in addition to, as well as to clarify, the Court's previous factual findings.

[6] The Court has considered every claim contained in Belmar's letters. To the extent that the Court does not address certain claims in Belmar's letters here, the Court finds that those claims are meritless.

[7] There is no evidence that Investigator Menton committed perjury as Belmar claims. The Court finds that Investigator Menton is a credible witness.

When Belmar was apprehended, law enforcement officers found an iPhone inside Belmar's jacket pocket.[8]  (*Fatico* Tr. at 44:23–45:2.)  At the *Fatico* hearing, the Government introduced an FBI Form FD-302 that states: "[w]hile conducting an inventory of BELMAR's property the following items were seized: One Black iPhone 11 Pro Max in a clear plastic case (located in BELMAR's front right jacket pocket)."  (GX 10 at 2.)  In addition to claiming that the iPhone was not his, Belmar claims that "they don't even make black models of iPhone[] 11 pro or max."  (Def.'s Dec. Letter at 3.)  The Court agrees with the Government that "[i]f the iPhone was gray and the invoicing officer invoiced it as black instead of gray or dark gray," it does not make a difference here, because the Court is persuaded that the iPhone at issue is Belmar's.  (Jan. Conf. Tr. at 13:9–12, ECF No. 65.)  As the Government points out, "[t]here was a phone.  It was pulled off his person.  That's the [phone] that the Cellebrite was run on, and that's where the text and Google searches [at issue] came from."  (*Id.* at 13:13–15.)

Third, while Belmar was in the hospital shortly after his arrest, and before Investigator Menton interviewed him, Belmar waived his *Miranda* rights voluntarily and admitted to shooting at the rival gang members to retaliate against them.  Investigator Menton testified at the *Fatico* hearing that he advised Belmar of his *Miranda* rights before interviewing him, Belmar agreed to waive those rights voluntarily, and Belmar signed a waiver form.  (*See Fatico* Tr. at 46:6–14, 79:17–25; *see also* GX 11 at 1 (noting that "BELMAR was issued the FD-395 rights waiver form, which he advised he fully understood and he signed on December 11th, 2020, at 11:54 pm.")).  After waiving his *Miranda* rights, Belmar stated, among other things, that he was

---

[8] Belmar provided oral consent for law enforcement to search the contents of his iPhone.  (*See Fatico* Tr. at 49:22–50:11; GX 11 at 2–3 ("On December 12th, 2020, at 12:15 am, BELMAR gave verbal consent to review the content in his [iPhone], which was located on his person at the time of his arrest.  BELMAR was given the cell phone, which he unlocked using the pass code.")).

6

"shooting at [] two males," and that the "shooting incident was [in] retaliation" against the rival street gang for having attacked "Smoove," Belmar's fellow gang member. (*See* GX 11 at 1–2.) Although Belmar contends that Investigator Menton's description of the interrogation should be disbelieved because Investigator Menton did not record the interrogation, Investigator Menton testified credibly at the *Fatico* hearing that he did not have a recording device with him. (*Fatico* Tr. at 46:15–18.)

## II.   Obstruction of Justice[9]

Belmar attempted to obstruct justice by submitting two sworn letters to the Court,[10] in which he supplied materially false information in an attempt to influence the Court's calculation of his Guideline Range and its determination of the appropriate sentence for his unlawful conduct.

Belmar has asserted repeatedly that he did not commit the December 11, 2020 shooting, even though the evidence demonstrates that Belmar fired 6–7 shots at the rival gang members on that day. First, Investigator Menton testified that he apprehended Belmar after observing Belmar fire his gun at the rival gang members and drop the gun as he was chased by law enforcement officers. (*See Fatico* Tr. at 40:21–41:13.) Second, Belmar admitted that he was "shooting at [] two males," and that the "shooting incident was [in] retaliation" against members of the rival street gang for having attacked Smoove.[11] (GX 11 at 1–2.)

---

[9] On June 18, 2024, the Court ordered the parties to submit supplemental briefing with respect to the obstruction of justice enhancement. (Order, ECF No. 75.) The Government submitted its supplemental letter on June 21, 2024. (Gov't Suppl. Letter, ECF No. 76.) Belmar submitted his response on June 28, 2024. (Def.'s June Letter, ECF No. 77.)

[10] Belmar's December 27, 2023 and March 11, 2024 letters to the Court state that he is signing them "under 28 U.S.C. Section 1746 under penalties of perjury." (Def.'s Dec. Letter at 3; Def.'s Mar. Letter at 3.)

[11] There is additional evidence that supports the Court's finding that Belmar committed the shooting, but the Court does not reference it all here.

Belmar's false claims with respect to whether he was the shooter are material to the Court's sentencing decision, and Belmar made these claims with the specific intent to obstruct justice. Belmar's false claims, if credited, would have impacted the Court's calculation of Belmar's Guideline Range and the Court's decision as to the appropriate length of Belmar's term of incarceration. In addition, the Court finds that Belmar submitted these letters with the specific intent to obstruct justice. The Court finds that by claiming falsely that he did not engage in the shooting, and by claiming that evidence purporting to identify him as the shooter is false, Belmar sought to influence the Court's determination of his Guideline Range and sentence.

The Court rejects as incredible Mr. Pittell's contention that Belmar's denials were made only to "preserve the record" of his contentions, rather than to lessen his sentence.

## III. Acceptance of Responsibility

Belmar is not entitled to a reduction of points for acceptance of responsibility. First, although Belmar pleaded guilty to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), his guilty plea does not entitle him to a reduction as a matter of right. *See* U.S.S.G. § 3E1.1 cmt. n.3. Second, Belmar is not entitled to a reduction because he has falsely denied having been the shooter in his *pro se* letters to the Court. In Belmar's *pro se* letters, Belmar falsely claims that he was not the shooter even though, among other things, Investigator Menton testified that he apprehended Belmar after observing Belmar (1) fire his gun and (2) drop the gun as he was chased by law enforcement.[12] *See id.* cmt. n.1(A) ("A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true

---

[12] The Court recognizes that Belmar conceded—in a letter submitted by counsel—that his conduct constituted reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25. (Def.'s Jan. Letter at 7.) In an email to the Court on July 8, 2024, Belmar's counsel stated that "Mr. Belmar does not deny possessing the gun on December 11, 2020." Notwithstanding Belmar's counseled letter and email, Belmar's *pro se* letters demonstrate that Belmar has not taken responsibility for his being the shooter or shown remorse.

8

has acted in a manner inconsistent with acceptance of responsibility[.]"). Third, as the Court found in Section II *supra*, Belmar attempted to obstruct justice, and "[c]onduct resulting in an enhancement under §3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *Id.* cmt. n.4.

**IV.    Criminal History Category**

Belmar contends that Probation incorrectly added three points to his criminal history score for his parole violation: he claims that his sentence for the parole violation (1) could not have exceeded one year and one month; and (2) should be considered relevant conduct to the instant offense. (Def.'s Nov. 6 Letter at 1–2, ECF No. 60; PSR ¶ 38.)

The Sentencing Guidelines provide for three points to be added to a defendant's criminal history score for each prior offense that resulted in a sentence of over one year and one month. U.S.S.G. § 4A1.1(a). When Belmar violated his New York State sentence of parole, he was sentenced by the State to 24 months in prison.[13] (PSR ¶ 38; Gov't Sent'g Letter at 22.) Although Belmar did not serve those 24 months in prison, the Sentencing Guidelines count only the months *imposed* on an individual, not the number of months an individual *served*. U.S.S.G. § 4A1.2 cmt. n.2. Three points are thus added to Belmar's criminal history score.

The Sentencing Guidelines provide for no points to be added to a defendant's criminal history score for conduct relevant to the instant offense. *Id.* cmt. n.1. In deciding whether a parole violation (occasioned by the instant offense) counts as relevant conduct to the instant offense, the Sentencing Guidelines provide that the offense that matters for this determination is

---

[13] Belmar's eJustice report reflects that on November 26, 2019, Belmar was sentenced to direct parole for two years for criminal sale of a controlled substance in the third-degree, and that on April 20, 2021, Belmar was sentenced separately to "2 Year(s)" for his parole violation. There is no evidence in the record that reflects that Belmar received anything but a sentence of 24 months' imprisonment for his parole violation. (*See* Gov't Sent'g Letter at 22.)

9

not the parole violation, but rather is the offense in connection with which the parole was initially imposed. *United States v. Fermin*, 252 F.3d 102, 108 (2d Cir. 2001) (quoting *United States v. Garcia-Hernandez*, 237 F.3d 105, 110 (2d Cir. 2000)); *United States v. Sommerville*, No. 22-981, 2024 WL 1266227, at *2 (2d Cir. Mar. 26, 2024) (summary order). Belmar's parole violation is not relevant conduct to the instant offense because Belmar's parole was imposed for his 2019 conviction for criminal sale of a controlled substance in the third-degree, rather than conduct related to the instant offense.

Probation correctly concluded that Belmar is in criminal history category IV.[14]

---

[14] Based on the amended guidelines, effective November 1, 2023, Belmar receives one, rather than two, criminal history points for a total of eight points pursuant to Section 4A1.1(e). (Gov't Sent'g Letter at 23.) Based on a criminal history score of eight, Belmar is in criminal history category IV.

## CONCLUSION

For the foregoing reasons, the Court finds that Belmar's offense level is 26 and that Belmar is in Criminal History Category IV. Belmar's base offense level is 20 pursuant to Section 2K2.1(a)(4)(A). Belmar receives a four-level enhancement pursuant to Section 2K2.1(b)(6)(B) because Belmar used a firearm and ammunition in committing reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25. Two additional points are added pursuant to Section 3C1.1 because Belmar attempted to obstruct justice.

Based on an offense level of 26 and a Criminal History Category of IV, Belmar's Guideline Range is 92–115 months' imprisonment.

SO ORDERED.

Dated: New York, New York
       July 16, 2024

                                      */s/ Kimba M. Wood*
                                      KIMBA M. WOOD
                                  United States District Judge